[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This contested matter originally involved custodial issues as well as a full range of financial issues.
Custodial issues were resolved by agreement, as a result of the efforts, and based upon the recommendations, of Maureen C. Gould, MA, Family Relations Counselor. Her major recommendations were:
1.) Both parents are to be actively involved and responsible for the chiidrens' care. CT Page 14246
2.) It would not be in the childrens' best interest to relocate to Florida.
 3.) Counseling is a high priority for the family. a. Mother's relationship with Lauren is a difficult one, requiring improvement. b. Father does not communicate well with mother.
The parties were particularly appreciative of Counselor Gould's offer to continue her services in the future, without the need to file a motion or seek a court order, should the parties reach a post-dissolution impasse.
Should custodial or access issues arise again, this court recommends that a Guardian ad Litem be appointed to advocate for the childrens' best interests before any motion is heard and that Counselor Maureen Gould continue in her role.
Counselor Gould's extended analysis of the parties, their children and the issues raised, the foundation for her August 21, 2001 recommendations, have not been placed in the file. Because future disputes are possible, the analysis should be entered forthwith.
Findings:
Following direct canvassing by the court, it is apparent the parties clearly understood the custodial agreement executed by them, found it to be fair and equitable and freely arrived at. Whereupon, we proceeded to deal with the financial issues via oral argument and testimony of the two parties, an approach approved by both parties.
Neither party is primarily responsible for the marital breakdown. Each was guilty of some inappropriate behavior, but their behaviors were symptomatic of the breakdown rather than the cause thereof.
Defendant mother sought alimony and an asset division beyond the norm, given the court's view of the facts. The court regrets her extremes for fear that father's effective defense thereof, may have so irritated mother that it will negatively impact her future behavior with regard to father's relationship with the children, a relationship appropriately resolved at the moment. It would have been far better for all if mother had rejected the siren call of big alimony payments and weighed asset division in favor of equal divisions more appropriate to this fact situation.
Father has been a generous litigant who acceded to a number of mother's financial requests and who waived claims he might have pursued. When he disputed mother's financial claims, he did so gently, without CT Page 14247 deprecation. He seemed committed to preserving the peace achieved through the custodial settlement.
Mother's financial claims were presented in more harsh tones, attacking father in an attempt to establish fault. His responses, required once the attack was made in court, were quiet in tone, involving in part, an undisputed unfortunate behavior by mother that father had raised previously in court, out of the hearing of the children. Had he made the incident known, the children may well have been devastated. Mother's claim, a three month affair by father, which he did not deny, had been raised repeatedly by mother, in court and in the family home. Father's refusal to counter it with an in-home report of her unfortunate behavior illustrated the different approach each was taking and the concern of each for the best interests of the children, who should not be burdened with adult divorce issues.
Mother is employed below her earning potential. Making better use of her existing skills and taking advantage of training calculated to expand those skills, will enable her to become more self-sufficient. The time limited alimony award is calculated, in both term and amount, to extend beyond the childrens' minority and to afford mother ample opportunity to develop her economic potential.
The equal division of marital assets will provide defendant mother with a personal estate capable of providing housing and a reasonable standard of living. Awarding mother 60% of the marital estate, as she requested, is not appropriate. The child support, established by Connecticut's intricate mandatory formula, will provide still further funding for the family's welfare.
Plaintiff father's family has been financially generous during the marital years. Neither father nor his family have sought the return of any of those funds nor their removal from the marital estate, a common practice in many similar financial disputes.
Mother claims an inheritance of CNB stock and savings bonds received by father from his family to be a marital asset, Those funds have been consistently maintained as father's separate account. No marital efforts were expended to maintain or enhance those accounts, nor was any portion ever used for marital purposes. Throughout its existence, the inheritance was isolated and treated as father's asset, separate and apart from the family's marital assets. Thus they are not included as marital assets.
The plaintiff, Lawrence J. Murphy, and the defendant, Patrice Murphy, whose birth name was Patrice Essendrop, were lawfully married on August 22, 1981 at Waterford, Maine. CT Page 14248
At least one of the parties has lived continuously in this state for at least one year next preceding the date and filing of the complaint.
Plaintiff and defendant have two minor children, issue of this marriage:
 Lauren Ruth Murphy, born October 20, 1989, and Lawrence Maxfield Murphy, born May 24, 1991
The marriage of the parties has broken down irretrievably with no hope of reconciliation.
Neither plaintiff nor defendant has received any public assistance from the State of Connecticut or any of the cities or towns thereof.
Having reviewed the evidence and the sworn financial affidavits of each of the parties in the context of the required considerations set forth in Title-46b, Chapter 815j of the Connecticut General Statutes, a decree of dissolution shall enter, and the following shall apply:
CHILD SUPPORT:
1.1 Husband shall pay wife child support in the amount of $296 per week until Lauren turns 18 or graduates high school whichever later occurs, but in no event later than her 19th birthday. Then reduced to $196 for Max under the same terms.
1.2 Husband shall claim both children for federal and state tax exemptions until wife's net earnings increase to 50% of husband's net earnings, whereupon the exemptions are to be shared.
ALIMONY:
2.1 Husband shall pay wife $145 per week as periodic alimony for ten years, non-modifiable as to term and to terminate upon the death of either party, wife's remarriage or her cohabitation as defined by statute.
MEDICAL INSURANCE:
3.1 Husband shall maintain health insurance for the minor children. Husband shall pay 57%, and wife 43%, of all unreimbursed medical, dental, optical, mental health and prescription expenses of those minor children.
3.2 Connecticut General Statutes § 46b-84e is incorporated herein. CT Page 14249
3.3 Each party shall be responsible for their own medical insurance and all unreimbursed expenses.
AUTOMOBILES:
4.1 Each party shall retain their own vehicles (husband: 1996 Jeep Cherokee; wife: 1998 Chevrolet Ventura).
4.2 Each party shall be responsible for all costs associated with said vehicle.
MARITAL RESIDENCE:
5.1 The marital residence, 332 East Street, Hebron, is listed for sale. Sale is to be pursued with diligence. The court shall retain jurisdiction over the sale to the extent necessary to effectuate the terms of these orders.
5.2 Husband and wife shall share the net proceeds equally after mortgages, closing costs and real estate commissions are paid.
MARITAL ASSETS:
6.1 Wife shall retain her interests in her CSE Credit Union account, her Advest IRA and her Roth IRA.
6.2 Husband shall retain his interest in his GBT savings and checking account, his Tyco stock, his Advest IRA, his Roth IRA, his 401(K) account through his place of employment and the cash value of his whole life policy.
6.3 All other marital assets, including the net proceeds of the sale of the marital home, shall be allocated so that the martial assets are divided equally between husband and wife.
HUSBAND'S INHERITANCE:
7.1 Husband inherited 4000 shares of CNB stock, current value of approximately $156,000, and savings bonds, current value of approximately $5,600, neither of which is a marital asset, both of which father is to retain.
PERSONAL PROPERTY:
8.1 Wife shall retain, free and clear of any claim by husband: the John CT Page 14250 Deere tractor and all items of personal property not otherwise distributed herein.
8.2 Husband shall retain, free and clear of any claim by wife, the 1988 Kawasaki motorcycle, the 22' Kiwi sailboat, the Civil War trunk from husband's great grandfather, the camera, lenses and photographic equipment from husband's grandfather and husbands' personalty.
8.3 The set of Wedgewood china and the china cabinet from husband's grandmother as well as the diamond stud earrings from husband's grandmother shall be the property of Lauren Ruth Murphy, but may be held by mother.
8.4 Except as otherwise provided herein, all assets in the name or possession of wife (or of husband) shall hereinafter be and remain the sole property of wife (or husband).
DEBTS:
9.1 The parties shall each assume responsibility for credit cards or charge accounts in his or her own name.
9.2 Neither party shall create or attempt to create any indebtedness in the name of or against the other or to utilize or attempt to utilize the credit of the other for the purpose of creating any indebtedness.
NEGOTIATIONS:
10.1 The parties have been offered many opportunities to negotiate a resolution of the financial issues raised during this hearing but have been unable or unwilling to do so. Nevertheless, terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore the court hereby empowers the parties to confer, should they wish to do so, and to seek mutually acceptable variations of the court's orders.
10.2 Any such mutually negotiated modifications are to be submitted within thirty days directly to the undersigned, in written form, signed by all counsel and parties, for the court's approval, without costs and without the need to establish a substantial change of circumstances.
10.3 Beyond that date, or before any other court, modification shall be by the traditional route and must meet all the more formal CT Page 14251 requirements.
Steinberg